# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**ERNEST L. MOORER,**

    Plaintiff,

  v.                                        Case No. 17-CV-443

**NANCY A. BERRYHILL,**
*Deputy Commissioner of Operations,*
*Social Security Administration,*

    Defendant.

## DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION

Ernest L. Moorer seeks reversal of a decision (Tr. 6-23, ECF No. 14) by Administrative Law Judge Patrick H. Morrison, who determined that Mr. Moorer was not eligible for disability benefits for the period from July 1 to December 31, 2007. This period reflects an alleged onset date of July 1, 2007, Tr. 9, 268, and Mr. Moorer's acknowledged date last insured of December 31, 2007, Tr. 11.

Mr. Moorer, who is appearing pro se, appears to question whether the ALJ's decision is supported by substantial evidence and whether the ALJ improperly took into consideration Mr. Moorer's work status during the 2014 time period to assess Mr. Moorer's status in 2007. Pl.'s Br. 8, ECF No. 15. After review, the Court finds that the ALJ carefully set forth a factual, logical basis for his decision and did not improperly consider Mr. Moorer's 2014 work status. The ALJ's decision is therefore affirmed.

I.  **Background**

Mr. Moorer is a veteran of the United States Navy, having served this country from 1978 to 1981, when he was discharged under honorable conditions. Tr. 94-95. On May 25, 2005, the Veterans Administration issued a Rating Decision finding that Mr. Moorer was 100% disabled due to schizophrenic disorder symptoms. Tr. 16, 1653-54. More specifically, the Ratings Decision reported that psychiatric reports from February 2000 to May 2004 documented ongoing treatment for paranoid schizophrenia, which included a prescription for Olanzapine (brand name Zyprexa), an antipsychotic medication. Tr. 1654. The Rating Decision also reported an interview with a case manager from the VA Domiciliary where Mr. Moorer resided in 2004, who stated that Mr. Moorer displayed psychotic symptoms while at the Domiciliary, including "very disorganized" thinking, "much paranoia," and "some delusions of persecution." Tr. 1654-56.

On March 15, 2013, Mr. Moorer sought disability benefits, with an onset date of July 1, 2007, and with a date of last insured of December 31, 2007. Tr. 270, Tr. 11. In a decision issued in October 2014, ALJ William M. Zellman determined that Mr. Moorer was not disabled during this six-month period. Tr. 185-96. On December 23, 2014, however, the Appeals Council remanded ALJ Zellman's decision, requiring an assessment of the VA's Ratings Decision and of Mr. Moorer's work history.

The matter then went to ALJ Morrison, who conducted a hearing on Mr. Moorer's claims on June 2, 2015. Tr. 24-77.

As an aside, the Court notes that it reviewed thoroughly the transcript of the hearing and commends ALJ Morrison for the professional, courteous, and dignified manner in which he conducted the hearing, at which Mr. Moorer appeared without counsel. The ALJs responsible for adjudicating disability claims have an impossible caseload, have few resources to assist them, and often deal with difficult and complicated medical and social issues as well as understandably emotional, sometimes inartful, claims from individuals who live in difficult circumstances and often appear without counsel. Despite these challenges, ALJ Morrison conducted a decorous hearing, did not rush Mr. Moorer, but rather treated him kindly and gave him every opportunity to make a complete record. Of course, conducting a professional hearing does not insulate a decision from reversal if it is unsound, but process matters, and ALJ Morrison ensured that the process followed in this case was exemplary.

ALJ Morrison issued a decision on August 12, 2015. Tr. 9-18. Faithful to the Remand Order, ALJ Morrison discussed at length his reasons for giving "little weight" to the VA Ratings Decision. Tr. 16. Among other things, the ALJ noted that the VA Ratings Decision preceded the relevant time period in late 2007 by two years and consequently did not have the benefit of the psychiatric reports prepared in June, July, October, November, and December 2007. *Id.* The ALJ did review those psychiatric reports from 2007 in concluding that Mr. Moorer was not disabled. Tr. 12-13, 15-16.

Additionally, the ALJ reviewed Mr. Moorer's work history, as required by the Remand Order. The ALJ recognized that Mr. Moorer had engaged in "some type of return to work . . . during 2007," though the ALJ also noted that Mr. Moorer had "worked only a few hours each week." Tr. 11. Accordingly, the ALJ discounted this work and found that it did not constitute substantial gainful employment during the relevant time period, nor did it figure in the ALJ assessment of Mr. Moorer's residual functional capacity (RFC). Tr. 11, 15-16.

Turning to the RFC, the ALJ followed the required two-step process, assessing whether Mr. Moorer had a mental impairment (he did) and then determining how Mr. Moorer's symptoms affected his functioning. Tr. 15. As to this latter issue, the ALJ recounted the record evidence and concluded that Mr. Moorer's "mental impairments limited him to simple, routine, repetitive tasks only, which require simple work-related decisions with few changes in the routine work setting." Tr. 16. The ALJ added the further limitation of "only occasional interaction with supervisors, co-workers and the general public" due to Mr. Moorer's occasional bouts of anger. Tr. 16.

In the end, the ALJ determined that Mr. Moorer was "not disabled" under the Medical-Vocational Guidelines. Tr. 17. This conclusion derived from the ALJ's review of testimony from a qualified vocational expert that, given Mr. Moorer's RFC, he could perform the requirements "of representative occupations in the national economy." *Id.*

The SSA Appeals Council denied Mr. Moorer's request for review on March 3, 2017, (Tr. 1-3), making ALJ Morrison's decision final and appealable, Def.'s Br. 2, ECF No. 18.

On March 27, 2017, Mr. Moorer appealed the ALJ decision. ECF No. 1. Both parties consented to magistrate judge jurisdiction. ECF Nos. 5 & 7. As he did before the ALJ, Mr. Moorer is proceeding pro se. The case is now fully briefed and ready for disposition. *See* Pl.'s Br., ECF No. 15; Def.'s Br., ECF No. 18. Mr. Moorer did not file a reply brief.

## II. Standard of Review

"Judicial review of Administration decisions under the Social Security Act is governed by 42 U.S.C. § 405(g)." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010)). Pursuant to sentence four of § 405(g), federal courts have the power to affirm, reverse, or modify the Commissioner's decision, with or without remanding the matter for a rehearing.

Section 205(g) of the Act limits the scope of judicial review of the Commissioner's final decision. *See* § 405(g). As such, the Commissioner's findings of fact shall be conclusive if they are supported by "substantial evidence." *See* § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (other citations omitted). The ALJ's decision must be affirmed if it is supported by substantial

evidence, "even if an alternative position is also supported by substantial evidence." *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004).

In reviewing the record, this Court "may not re-weigh the evidence or substitute its judgment for that of the ALJ." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Rather, reviewing courts must determine whether the ALJ built an "accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citing *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) and *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001)). The ALJ's decision must be reversed "[i]f the evidence does not support the conclusion." *Beardsley*, 758 F.3d at 837 (citing *Blakes*, 331 F.3d at 569). Likewise, reviewing courts must remand "[a] decision that lacks adequate discussion of the issues." *Moore*, 743 F.3d at 1121 (citations omitted).

Reversal also is warranted "if the ALJ committed an error of law or if the ALJ based the decision on serious factual mistakes or omissions," regardless of whether the decision is otherwise supported by substantial evidence. *Beardsley*, 758 F.3d at 837 (citations omitted). An ALJ commits an error of law if her decision "fails to comply with the Commissioner's regulations and rulings." *Brown v. Barnhart*, 298 F. Supp. 2d 773, 779 (E.D. Wis. 2004) (citing *Prince v. Sullivan*, 933 F.2d 598, 602 (7th Cir. 1991)). Reversal is not required, however, if the error is harmless. *See,*

*e.g., Farrell v. Astrue*, 692 F.3d 767, 773 (7th Cir. 2012); *see also Keys v. Barnhart*, 347 F.3d 990, 994–95 (7th Cir. 2003) (citations omitted).

## III. Discussion

As noted above, Mr. Moorer is proceeding without counsel, and his brief to this Court does not develop any legal arguments. From the Statement of Issues in his brief, the Court has discerned two complaints with the ALJ's decision: (1) the finding that Mr. Moorer is not disabled lacks substantial evidence support; and (2) the ALJ made inappropriate use of Mr. Moorer's work in in 2014. Pl.'s Br. 3, 8, 11-12. Each argument is addressed below.

### A. Legal framework

Under the Social Security Act, a person is "disabled" only if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). The disability must be sufficiently severe that the claimant cannot return to his prior job and is not capable of engaging in any other substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

In determining whether a person is disabled, the SSA must follow a five-step sequential evaluation process, asking, in order: (1) whether the claimant has engaged in substantial gainful activity since his alleged onset of disability; (2) whether the claimant suffers from a medically determinable impairment or

combination of impairments that is severe; (3) whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of any impairment listed in the SSA regulations as presumptively disabling; (4) whether the claimant's RFC leaves him unable to perform the requirements of his past relevant work; and (5) whether the claimant is unable to perform any other work. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the claimant is disabled. *Briscoe v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "The claimant bears the burden of proof at steps one through four." *Id.* (citing *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004)). Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Id.*

### B. Legal analysis

#### 1. The ALJ's decision was supported by substantial evidence

ALJs use a two-step process for evaluating an individual's symptoms. Social Security Ruling No. 16-3p, 2016 SSR LEXIS 4, at *5–10 (Mar. 16, 2016). First, the ALJ must "determine whether the individual has a medically determinable impairment (MDI) that could reasonably be expected to produce the individual's alleged symptoms." *Id.* at *5. Second, the ALJ must "evaluate the intensity and persistence of an individual's symptoms such as pain and determine the extent to

which an individual's symptoms limit his or her ability to perform work-related activities." *Id.* at *9.

Reviewing courts "will overturn an ALJ's decision to discredit a claimant's alleged symptoms only if the decision is 'patently wrong,' meaning it lacks explanation or support." *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017) (quoting *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014)). "A credibility determination lacks support when it relies on inferences that are not logically based on specific findings and evidence." *Id.* "In drawing its conclusions, the ALJ must 'explain her decision in such a way that allows [a reviewing court] to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." *Murphy*, 759 F.3d at 816 (quoting *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011)).

The ALJ here concluded that Mr. Moorer's medically determinable impairments could reasonably be expected to cause his alleged symptoms but found that Mr. Moorer's statements concerning the intensity, persistence, and limiting effects of those symptoms "are not entirely credible" for reasons discussed in the decision. Tr. 15. Among the reasons discussed, the ALJ noted the following:

- Mental status examinations from June through December 2007 uniformly described Mr. Moorer as free from addictive behavior, "fully

oriented," not suffering from mood disorders, not experience suicidal or homicidal ideations, and "alert." Tr. 13, 15.

- Two state agency psychological consultants each believed that Mr. Moorer "could perform the basic mental requirements of unskilled work." Tr. 16.

- Mr. Moorer's statement at the hearing that, during the relevant time period, he could follow 1-3 step instructions at work and had maintained sobriety, though he did occasionally hear voices in his head. Tr. 15.

- Mr. Moorer was able to engage in normal activities of daily living, though he did have a benefits payee due to past gambling addiction issues. Tr. 14

Based on the evidence of record, the ALJ reasonably found that Mr. Moorer, during the relevant period, did suffer impairments, but they were not so great as to preclude full-time employment, and the ALJ assigned specific limitations that were again linked to record evidence. Tr. 16. On its face, there was nothing unreasonable about the ALJ's findings and conclusions. They were properly supported and flowed logically from the objective evidence. Moreover, Mr. Moorer does not take issue with the accuracy of the mental status investigations reported during the relevant time

period, nor has he offered any medical or other evidence in contradiction. There simply is no basis to disturb the ALJ's findings.

Even though Mr. Moorer does not raise the issue, it should be noted that the ALJ specifically addressed the VA Rating Decision form 2005 that found Mr. Moorer to be 100% disabled. The ALJ considered the Ratings Decision, but noted that it pre-dated by two years the relevant time period of July-to-December of 2007. He also observed that the Rating Decision did not engage in the type of functional analysis that would be of relevance in the present context. More importantly, the ALJ that the Rating Decision conclusion was undercut by the actual mental health status reports, eight in all, that documented Mr. Moorer's psychological condition during the relevant period. Based on these reports, which without exception observed no significant mental impairments (Tr. 13), and the absence of any contrary evidence (Tr. 13-14), the ALJ decided reasonably to give the VA Ratings Decision little weight in the assessment of Mr. Moorer's mental impariments during the relevant period. Tr. 15.

Again, though not raised by Mr. Moorer, the Court finds no error in the ALJ's consideration of work Mr. Moorer performed in 2007. This is largely because the ALJ gave this work little, if any consideration. It certainly had no affect on the ALJ's determination that Mr. Moorer did not engage in significant gainful employment during the relevant time period. Tr. 11. The only other use the ALJ made of the 2007 work was to note that Mr. Moorer was able to perform "simple, routine tasks" during the relevant period. Tr. 14. But here the ALJ used the

11

instances of work in 2007 to confirm what Mr. Moorer had testified about at the hearing, which was that he believed he could perform 1-3 step tasks during the relevant period. This confirmatory use was not unreasonable and would not justify remand.

Nor did the ALJ err in basing his decision in part on the findings of the two state agency psychologist. Reliance on such reports is supported by agency regulations, *see* 20 C.F.R. § 404.1527(e)(2)(i), and has long been recognized by the Seventh Circuit, *Cass v. Shalala*, 8 F.3d 552, 55 (7th Cir. 1993). Mr. Moorer offered no medical source opinion to counter this evidence, and in many respects it was simply cumulative to evidence, such as the contemporaneous mental health status reports, that the ALJ relied on in reaching his decision, rendering any error harmless.

For all of these reasons, Mr. Moorer's claim that the ALJ's decision was unsupported by substantial evidence is without merit.

**2.     The ALJ did not err in considering work performed in 2014**

Mr. Moorer's brief suggests that he takes issue with the ALJ's consideration of work that Mr. Moorer could perform in 2014. Pl.'s Br. 8 ("D. Did ALJ err in not enforcing period of disability laws, rules regulations when said: 'you are working now.'"). And it is true that in the section of his decision assessing the severity of Mr. Moorer's impairments, the ALJ did note that Mr. Moorer was able to perform "some

part-time unskilled work [during the relevant period] and is currently doing unskilled work which he began in the 2nd quarter of 2014." Tr. 14.

The ALJ believed the 2014 work to be relevant because Mr. Moorer's "mental health condition [was] essentially unchanged" from his condition in 2007. The Court's review of the record finds nothing to contradict the ALJ's equating of Mr. Moorer's mental health condition during the relevant period with 2014, so the the ALJ's relevance finding was appropriate. Moreover, the ALJ's observation about Mr. Moorer's work in 2014 played a miniscule part in the overall decision, which was amply supported by other record evidence. As such, even if in error, the mention of 2014 work was harmless.

## IV. Conclusion

For all the foregoing reasons, the Court finds that the ALJ did not commit reversible error in finding that Mr. Moorer was not disabled from July 1, 2007, to December 31, 2007. The Court therefore will affirm the ALJ's decision denying Mr. Moorer's claim for Social Security benefits.

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the Commissioner's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**.

**FINALLY, IT IS ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 28th day of September, 2018.

BY THE COURT:

*s/ David E. Jones*
DAVID E. JONES
United States Magistrate Judge